THE PEOPLE *ex rel.* City of Springfield, Appellee, *vs.* CHARLES H. EDMANDS, County Treasurer, Appellant.

*Opinion filed December 21, 1911.*

1. CONSTITUTIONAL LAW—*what constitutes the final passage of a bill.* Any action evidencing the intention to enact a bill into a law, where the vote is taken by yeas and nays and entered on the journal, is a final passage of the bill.

2. SAME—*when receding from amendments by a yea and nay vote is a final passage of the bill.* Where one house passes a bill and the other house amends it and passes it as amended, and afterwards recedes from the amendment by a vote taken by yeas and nays and entered on the journal, the vote to recede is a final passage of the bill without the amendments. (*People v. DeWolf,* 62 Ill. 253, distinguished.)

3. SAME—*Illinois Commission Form of Government act does not deprive voters at the primary of constitutional rights.* The Illinois Commission Form of Government act, (Laws of 1909-10, p. 12,) by not permitting a voter at the primary election to vote for more than one candidate for the nomination to the office of mayor nor for more than four candidates for the nomination to the office of commissioner, does not deprive the voter of any constitutional right, as he has no greater rights at the regular election than he has at the primary.

4. SAME—*Illinois Commission Form of Government act is not invalid as a special or local law.* The Illinois Commission Form of Government act (Laws of 1909-10, p. 12,) is not invalid, as a special or local law affecting the incorporation of villages, cities and towns, because of the provision that it is only to become effective in municipalities which may adopt it by vote, nor because the people, by vote, may cease to act under it; nor is it invalid

because it can only be adopted by cities having a population of not exceeding 200,000.

5. SAME—*a classification based upon substantial differences in population is valid.*  A classification of municipal corporations based upon substantial differences in population and the necessity for different officers and different powers is valid, as it was not intended by the provision of the constitution against special or local laws concerning the organization of cities, towns and villages, that every hamlet or village should have the same organization, or even the same officers and powers, as the largest cities.

6. SAME—*Federal guaranty of republican form of government does not extend to municipal corporations.*  The Illinois Commission Form of Government act (Laws of 1909-10, p. 12,) does not violate section 4 of article 4 of the Federal constitution, which provides that the United States shall guarantee to every State a republican form of government, as such provision applies only to the form of government of the State, and not to its regulation of affairs of minor municipalities or local subdivisions of the State.

7. SAME—*what not a violation of provision that no law shall be revived or amended by reference to its title, alone.*  Where an act purports by its title to be an act to amend a specified general law by adding a certain article and sets out said article at length, and there is no change made in the general law except to add the article set out, there is no violation of the constitutional provision that no law shall be amended by reference to its title, alone.

8. MANDAMUS—*when officer is individually liable for costs of a proceeding against him.*  A public officer who represents no one but himself in refusing to perform a duty enjoined upon him by law is personally and individually liable for the costs in a *mandamus* proceeding to compel him to perform such duty.

VICKERS, FARMER and COOKE, JJ., dissenting.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

EDMUND BURKE, State's Attorney, A. SALZENSTEIN, THOMAS F. FERNS, and CLAYTON J. BARBER, for appellant:

The manner in which a bill is passed must be shown upon the face of the journal of each house.  Const. art. 4, sec. 12; *People* v. *Knopf,* 198 Ill. 340; *Cook County* v. *Healy,* 222 id. 310; *Spangler* v. *Jacoby,* 14 id. 297.

The senate having struck out all the house bill as passed by the house after the enacting clause, and never having affirmatively voted upon the bill, did not legally pass it by voting to recede from its own bill. Const. art. 4, sec. 12; *People* v. *DeWolf*, 62 Ill. 253.

A statute limiting the right of the elector at a primary election to vote for a less number of candidates than are to be nominated restricts the constitutional right of the voter and renders the act unconstitutional and void. *Rouse* v. *Thompson*, 228 Ill. 522; *People* v. *Strassheim*, 240 id. 279; *People* v. *Deneen*, 247 id. 289; *State* v. *Considine*, 42 Ohio St. 437.

The General Assembly shall not pass local or special laws for "incorporating cities, towns or villages, or changing or amending the charter of any town, city or village." Const. art. 4, sec. 22, clause 10.

The purpose of this constitutional provision was to prevent the legislature from creating or perpetuating dissimilarity in the organization or powers of cities, in order that all the people in the State might know the powers and organization of each of the cities in the State. 1 Debates Const. Con. 1870, p. 591, *et seq.; People* v. *Cooper*, 83 Ill. 585; *Cummings* v. *Chicago*, 144 id. 565; *People* v. *Wilcox*, 237 id. 421.

An attempt was made in the constitutional convention to amend this clause so that special legislation could be effective by vote of the people of the city to be affected, and also to classify cities by population, with reference to special legislation. 1 Debates Const. Con. 1870, pp. 593, 604.

It is not competent for the legislature to create or perpetuate by law any dissimilarity in the character of organization or powers in municipalities of the same class or grade. *People* v. *Cooper*, 83 Ill. 585; *People* v. *Normal*, 170 id. 468.

The legislature cannot make classifications upon the ground of alleged differences in circumstances and condi-

tions unless they actually exist, nor can it put it beyond the power of the courts to determine whether such differences do exist. *Knopf* v. *People,* 185 Ill. 20.

A classification by population which makes it absolutely certain that but one city in the State will be excluded from the operation of the act must be regarded as a mere device to evade the constitutional provision which forbids special legislation. *Devine* v. *Cook County Comrs.* 84 Ill. 590.

As to what constitutes a republican form of government within the meaning of the constitutional provision, see 34 Cyc. 1622; *Minor* v. *Hofferset,* 21 Wall. 175; *Duncan* v. *McCall,* 139 U. S. 449; Andrews on American Law, 191; 1 Curtis' Const. History of United States, chap. 32.

The commission form of government for municipalities is contrary to the provision of the Federal constitution and the constitution of the State of Illinois providing for a republican form of government. *Ex parte Farnsworth,* 135 S. W. Rep. 535; *In re Pfahler,* 150 Cal. 71; *Ex parte Wall,* 48 id. 279; *Santo* v. *State,* 2 Iowa, 165.

Amendments or changes in the laws by implication, without reference to title or otherwise, are obnoxious to the constitution. *People* v. *Hartsig,* 249 Ill. 353; *Badenoch* v. *Chicago,* 222 id. 71.

It was error to render a personal judgment against respondent for costs. *People* v. *Madison County,* 125 Ill. 334.

FRANK L. HATCH, ANDRUS & TRUTTER, and STEVENS & HERNDON, for appellee:

The action of the senate in receding from its amendments was a final passage of the bill by that body, within the meaning of the constitution. *Robertson* v. *People,* 20 Colo. 279; *State* v. *Corbett,* 61 Ark. 226; *Division of Howard County,* 15 Kan. 194; *People* v. *Supervisors,* 8 N. Y. 317; *Nelson* v. *Haywood County,* 91 Tenn. 596; *People* v. *DeWolf,* 62 Ill. 253; 5 Hinds' Precedents, 668,

669, 672, 673; *People* v. *Loewenthal,* 93 Ill. 213; 36 Cyc. 955, 956.

It is common knowledge that it has been the practice of each branch of the legislature of this State to finally pass bills by receding from its amendments and by the adoption of reports of committees of conference. This continued and repeated practice lends great strength to an interpretation of the constitution favoring the authority of the General Assembly to enact the law in question in the manner it did. *Cook .County* v. *Healy,* 222 Ill. 310; *State* v. *Gerhardt,* 145 Ind. 439; *Atwell* v. *Parker,* 93 Minn. 462; *Edwards* v. *Railroad Co.* 13 Colo. 59; *State* v. *Bryan,* 39 So. Rep. 929; *Johnson* v. *Great Falls,* 38 Mont. 369; *City Council* v. *Board of Comrs.* 77 Pac. Rep. 858; *Bunn* v. *People,* 45 Ill. 397.

The right of a voter to participate in the selection of candidates whose names will be placed on the official ballot is properly limited to the number of officers to be chosen at the election for which the primary is held. *People* v. *Election Comrs.* 221 Ill. 9; *Rouse* v. *Thompson,* 228 id. 522; *People* v. *Strassheim,* 240 id. 279; *People* v. *Deneen,* 247 id. 289.

An act general in its terms and uniform in its operation upon all persons and subject matter in like situation is a general law and not obnoxious to the objection that it is local or special legislation. *Hawthorn* v. *People,* 109 Ill. 302; *People* v. *Hazelwood,* 116 id. 319; *People* v. *Hoffman,* 116 id. 587; *Coal Co.* v. *Finlen,* 124 id. 666; *Park Comrs.* v. *McMullen,* 134 id. 170; *Cummings* v. *Chicago,* 144 id. 563; *People* v. *Martin,* 178 id. 611.

An act otherwise general is not rendered local or special by a provision that it shall operate only in such cities, villages and towns as may adopt it by vote, even though in practice it may result in similar municipalities being governed by dissimilar methods. *Chicago* v. *People,* 80 Ill. 496; *Potwin* v. *Johnson,* 180 id. 70; *People* v. *Hoffman,*

116 id. 587; *People* v. *Kipley,* 171 id. 44; *People* v. *Simon,* 176 id. 166.

The provision of the Commission Form of Government act allowing cities having adopted it to abandon such organization and return to the provisions of the act of 1872 is not in conflict with the constitution. *People* v. *McBride,* 234 Ill. 146.

Section 4 of article 4 of the constitution of the United States, which guarantees to every State a republican form of government, does not apply to municipalities created by States. *People* v. *Loeffler,* 175 Ill. 585; *In re Pfahler,* 150 Cal. 71; *Eckerson* v. *DesMoines,* 137 Iowa, 452; *Claiborne Co.* v. *Brooks,* 111 U. S. 400; *Forsythe* v. *Hammond,* 166 id. 506; *Williams* v. *Eggleston,* 170 id. 304; *Hopkins* v. *Duluth,* 81 Minn. 189; *Rushton* v. *Handley,* 115 Pac. Rep. 56; *Mayor* v. *Oil and Gas Co.* 115 id. 353; *Telegraph Co.* v. *Dallas,* 131 S. W. Rep. 80; *Brown* v. *Galveston,* 97 Tex. 1.

Municipal corporations are solely and purely creatures of the legislature, and the State constitution containing no restrictions on that body as to their form of government, the legislature may provide such form as it deems best. *True* v. *Davis,* 133 Ill. 522; *People* v. *Kipley,* 171 id. 44; *People* v. *Loeffler,* 175 id. 585; *People* v. *McBride,* 234 id. 172; *People* v. *Bowman,* 247 id. 276; *People* v. *Provines,* 34 Cal. 520; *Eckerson* v. *DesMoines,* 137 Iowa, 452; *Railroad Co.* v. *Whiting,* 161 Ind. 228; *State* v. *Wagner,* 170 id. 144.

The so-called initiative and referendum, as provided for in the act, is within the meaning of the term "republican form of government," as used in the constitution of the United States. *Kadderly* v. *Portland,* 44 Ore. 118; *Kiernan* v. *Portland,* 111 Pac. Rep. 379; *Oregon* v. *Telegraph Co.* 53 Ore. 162; *Eckerson* v. *DesMoines,* 137 Iowa, 452; *Ex parte Wagner,* 21 Okla. 33; *Bonner* v. *Belsterling,* 138 S. W. Rep. 571; *Telegraph Co.* v. *Dallas,* 134 id. 321;

252—8

*In re Pfahler,* 150 Cal. 71; Cooley's Const. Lim. (7th ed.) 42, 45; 2 Story on the Constitution, (5th ed.) sec. 1815; Black on Const. Law, 309, 310.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This proceeding for *mandamus* was begun in the circuit court of Sangamon county to test the constitutionality of the act passed by the Forty-sixth General Assembly authorizing the adoption of what is commonly known as the commission form of city government. (Laws of 1909-10, p. 12.) The city of Springfield was the relator, and the petition alleged that William H. Bowe was elected by the mayor and commissioners, organized as the city council, to the office of city treasurer, and that he qualified and demanded from appellant, Charles H. Edmands, Jr., county treasurer of said county, the amount of taxes and special assessments due to the city, which demand the appellant refused to comply with. The answer admitted the election of Bowe and that he qualified, and it justified the refusal to pay over the money of the city to him by alleging that the act never became a law because not enacted in accordance with the constitution, and that it was void because repugnant to the constitution of this State and the constitution of the United States. The relator demurred to the answer, and the appellant moved that the demurrer be carried back to the petition. The motion was denied and the demurrer sustained. The appellant excepted to the denial of the motion and sustaining of the demurrer and elected to stand by the amended answer, whereupon a judgment was entered awarding the peremptory writ, and this appeal was taken.

Section 12 of article 4 of the constitution contains the provision that "on the final passage of all bills the vote shall be by yeas and nays, upon each bill separately, and shall be entered upon the journal; and no bill shall become a law without the concurrence of the majority of the members

elected to each house." The method by which the act in question was passed is stated in the answer as follows: The bill for the act was passed by the house of representatives, as required by the constitution, and was transmitted to the senate, where it was referred to the committee on municipalities. It was reported to the senate as House Bill No. 43, and was read at large the first time before reference to the committee. On the same day the committee reported the bill back with amendments thereto, and recommended that the amendments be adopted and that the bill as amended do pass. The amendment consisted of striking out all after the enacting clause and inserting in lieu thereof a bill which was substantially the same but with minor changes and some additions and omissions. The bill, when it passed the house, contained more than sixty sections, and the action of the senate committee amounted to re-drafting the bill with the amendments. The report of the committee was adopted and the bill as amended was ordered to a third reading and the amendment printed. Afterward, the bill, still designated as House Bill No. 43, having been printed, was taken up and read at large a third time, and the question being, "Shall this bill pass, together with the senate amendments thereto?" it was decided in the affirmative by a vote of yeas 34, nays 1. A message was sent to the house informing the house that the senate had concurred with it in the passage of House Bill No. 43 with an amendment thereto, in the adoption of which amendment the concurrence of the house was asked. The house refused to concur with the senate in the adoption of its amendment to the bill and notified the senate of the refusal. A conference committee was appointed by both houses, which reported, recommending that the senate recede from its amendments and recommending the passage of the bill as reported from the house, with four amendments set forth in the report. The report was rejected by both house and senate. The house appointed members for

a new conference committee and notified the senate, but the senate refused to appoint members of a second committee, and on motion that the senate recede from its amendments to House Bill No. 43 the yeas and nays were called, and the question was decided in the affirmative by a vote of yeas 30, nays 2, entered on the journal in accordance with the constitution. The president of the senate thereupon announced that House Bill No. 43 (giving the title of the bill) had passed the senate without any amendments, and the secretary was instructed to notify the house of representatives of the action of the senate.

The constitution does not prescribe any form of procedure for the final passage of a bill other than the requirement of said section 12, and the view of the courts has been that any action evidencing the intention to enact a bill into a law, where the vote is taken by yeas and nays and entered on the journal, is a final passage of the bill. The senate had voted for the bill with the amendments, and by the second vote, taken in the manner required by the constitution, removed the amendments, leaving the bill as passed by the house. It is argued that it did not follow that the senate assented to the bill as passed by the house, but that such was the intention and understanding and that the vote receding from the amendment was intended as a final passage of the bill before it was amended there can be no doubt. Under similar provisions of the constitutions of other States it has been held, wherever the question has arisen, that if one house passes a bill and the other house amends it and passes it as amended and afterwards recedes from the amendments, and the vote is taken by yeas and nays and entered upon the journal, such vote is a final passage of the bill without the amendments. (*Robertson* v. *People,* 20 Colo. 279; *Division of Howard County,* 15 Kan. 194; *People* v. *Supervisors,* 8 N. Y. 317; *State* v. *Corbett,* 61 Ark. 226; *Nelson* v. *Haywood County,* 91 Tenn. 596.) These cases show a quite general understanding among leg-

islative bodies that a vote by one house receding from amendments made by it to a bill of the other house which has been passed by it as amended is a passage of the bill in its original form as passed by the other house, and such is the rule and practice in Congress. (5 Hinds' Precedents of House of Representatives, 668-672.) Counsel regard the case of *People* v. *DeWolf,* 62 Ill. 253, as stating a different rule. In that case a bill for an act to increase the jurisdiction of justices of the peace was passed in the house and amended in the senate and as amended was passed by a constitutional majority on the call of the yeas and nays. The house refused to concur in the amendment, and the senate, by a vote of the majority of a quorum less than a majority of all the members elected, receded from the amendment. This court stated the question to be decided, as follows: "The question is, to what did a constitutional majority of the senate give their assent?" and the court answered that it was to increase the jurisdiction of justices of the peace, coupled with a corresponding increase of their official bonds provided for by the amendment, and the constitutional majority never assented to the increase of jurisdiction without the increase of the official bonds. It was not held that receding from the amendment by a vote taken as required by the constitution would not have been a final passage of the bill, and the question here considered was not involved in any manner. The constitution was complied with in the passage of the act.

It is contended that the act deprives the voter of his constitutional right by not permitting him to vote at the primary election for more than one candidate for mayor although two are to be nominated, nor more than four candidates for commissioner although eight are to be nominated. Counsel call attention to the decision in *Rouse* v. *Thompson,* 228 Ill. 522, and other cases holding that the right to choose candidates for public office whose names will be placed upon the official ballot is of the same nature

as the right to vote for them after they are chosen, and that any law regulating primary elections must not curtail, subvert or restrict such rights. It does not appear to be claimed that a voter at the regular election would have a right to vote for two candidates for mayor and eight candidates for commissioner. What was held in those cases was, that a voter has a right to vote for as many candidates at a primary election as he can vote for at the regular election, and by this act he is given that right and can vote for as many candidates as he could vote for when the regular election takes place.

It is next insisted that the act violates section 22 of article 4 of the constitution, which prohibits special or local legislation in matters affecting the incorporation of villages, cities and towns. It does not violate that section because of the provision that it is only to become effective in municipalities which may adopt it by a vote. (*People* v. *Hoffman,* 116 Ill. 587; *People* v. *Kipley,* 171 id. 44.) If the law is not obnoxious to the constitution because it only operates where adopted, it cannot be objectionable because the people by a vote may cease to act under it. Another reason given is, that the city of Chicago is arbitrarily excluded by the provision that the act can only be adopted by cities having a population of not exceeding 200,000. The constitution does not require that every hamlet or village shall have the same organization, or even the same officers and powers, as the largest cities. It was not intended by the constitution to effect that object and classification based upon substantial differences in population, and the necessity for different officers and different powers has been recognized as valid. *Cummings* v. *City of Chicago,* 144 Ill. 563.

The next objection to the act is that it violates section 4 of article 4 of the constitution of the United States, which provides that the United States shall guarantee to every State in the Union a republican form of government. That provision applies only to the form of government of the

State, and not to its regulation of affairs of minor munici-
palities or local subdivisions of the State. (Cooley's Const.
Lim. 28.) It has never been supposed that holding a town
meeting, where the voters assemble and make their own
régulations of township affairs according to the form and
plan of a pure democracy, is a violation of the constitu-
tion of the United States. Local affairs were regulated in
that manner in New England when the constitution was
adopted, and the same method has existed in this State for
a long time without question. If the provisions for the
initiative, referendum and recall do not come within the
accepted definition of a republican form of government the
act is not therefore rendered invalid by the constitution of
the United States, because the provision of that constitu-
tion relates only to State government.

The next proposition of counsel is that the act violates
section 13 of article 4 of the constitution of this State,
which provides that no law shall be revived or amended by
reference to its title alone, but the law revived or section
amended shall be inserted at length in the new act. No
law was revived by this act, which by its title purported to
amend the general act providing for the incorporation of
cities and villages by adding thereto article 13. The article
added was printed at length, and as no change was made in
the act except by adding the article, the constitutional pro-
vision was not violated.

Finally, it is urged that the trial court erred in render-
ing a personal judgment against the defendant for costs.
By express provision of section 5 of the Mandamus act the
relator was entitled to recover its costs, and the fact that
appellant was an officer did not exempt him. (*County of
Pike* v. *People,* 11 Ill. 202.) There are cases where pro-
ceedings are begun and prosecuted by public officers in their
official character, in behalf of the public, where the judg-
ment should be against them for costs in their official ca-
pacity, and the case of *People* v. *Madison County,* 125 Ill.

334, was of that nature. The defendant represented no one but himself in refusing to perform a duty enjoined upon him by law, and he was personally and individually liable for costs.

The judgment is affirmed.

*Judgment affirmed.*

VICKERS, FARMER and COOKE, JJ., dissenting:

We do not concur with the majority opinion in its conclusion that the act providing for a commission form of government was passed in a constitutional manner by the legislature. The journals of the two houses show that this bill, known as House Bill No. 43, was introduced in and passed by the house and reported to the senate and there referred to the committee on municipalities. That committee amended the house bill by striking out all of the bill after the enacting clause and substituted in lieu thereof another bill, and that action of the committee was approved and the substituted bill passed by the senate. At the time the senate voted to pass the bill not a single section of House Bill No. 43 was before the senate as a house bill, but every line and every section for which the senate voted was matter substituted by the senate and its committee for the house bill. Having stricken out all of the house bill after the enacting clause, it seems unreasonable to hold that a vote for the substituted bill was a passage of the bill that had been bodily stricken out by way of amendment.

We do not think that the cases relied upon in support of the majority opinion are applicable to a situation such as is shown by the journals of the two houses in this case. The case of *Robertson* v. *People,* 20 Colo. 279, presented an entirely different question from the one involved here. In that case a bill for an act providing for the punishment of persons receiving deposits in a bank with the knowledge of its insolvency was introduced in the senate and regularly passed, and while pending in the house was amended

by adding a section, and the senate bill, with the section added by way of amendment, was regularly passed by the house. Upon its return to the senate that body refused to concur in the house amendment, and thereupon a committee of conference was appointed by the two houses, which recommended that the house recede from its amendment. Upon consideration of this report by the house, the question being, "Shall the house recede from the amendment and adopt the report of the committee?" the yeas and nays were called and entered upon the journal, and a constitutional majority having voted in the affirmative the report was adopted. The Supreme Court held that when the house receded from its former vote upon the amendment the bill was then left in the same form in which it had passed the senate, and both houses having thus agreed upon the same measure, the bill was passed in accordance with the requirements of the constitution. The difference between the Colorado case and the case at bar is both clear and substantial. In the Colorado case the house voted for every section of the senate bill in the identical form in which it passed the senate and at the same time for an additional section that had been added to the senate bill in the house. Receding from the vote by which the additional section was added manifestly could have no effect upon the affirmative vote for the other sections that had passed the house. Receding from the amendment under those circumstances amounted merely to a vote in the house to strike out one section which had been added in the house, leaving the balance of the bill intact.

The case of *State* v. *Corbett,* 61 Ark. 226, presents precisely the situation as the Colorado case. A bill had passed one branch of the legislature and afterwards it was amended in the other house and passed as amended, and subsequently the house receded from the amendments, leaving the bill as it had passed the other house. The vote by which the amendments were receded from was not a yea

and nay vote, and this was urged as an objection to the validity of the law. The Supreme Court held that it was not necessary that the vote upon a motion to recede from an amendment should be taken by yeas and nays and entered upon the journal, and this holding is supported by the New York case cited in the majority opinion. *People v. Supervisors of Chenango,* 8 N. Y. 317.

The other cases cited in the majority opinion are in line with the Colorado and Arkansas cases above referred to. None of these cases present the question that is involved in this case and therefore lend no support to the conclusion reached by the majority opinion. It is no answer, in our judgment, to this argument to say that there was a general correspondence between the substituted senate bill and the original house bill. When the senate struck out all of the house bill after the enacting clause there was nothing left. The house bill, by that vote and the substitution of another bill in its place, was no longer before the senate. Whatever was before the senate to be voted upon was a substituted bill, and it was for the substituted bill, only, that the senate voted. When the senate passed its substituted bill it did not pass the bill that had been stricken out, but it passed the bill that had been substituted therefor. The only way that the senate could have constitutionally passed the house bill would have been to first recede from the vote by which the substitute was adopted, then re-instate the house bill and pass it in the regular constitutional manner. No attempt was made to do anything of this kind. In our opinion this bill never became a law.

We have not considered any constitutional objections to this act upon the assumption that it was regularly enacted, and we express no opinion upon those questions.