62 Ill.2d 506 (1976)
343 N.E.2d 453
UNITED PRIVATE DETECTIVE AND SECURITY ASSOCIATION, INC., et al., Appellants,
v.
THE CITY OF CHICAGO et al., Appellees.
No. 47531.
Supreme Court of Illinois.
Opinion filed January 20, 1976.
Rehearing denied March 25, 1976.
*507 Donald L. Metzger and James L. Fletcher, of Chicago (Burditt and Calkins, of counsel), for appellants.
*508 William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Jerome A. Siegan, Assistants Corporation Counsel, Lee J. Schwartz, Special Assistant Corporation Counsel, and Jennifer Duncan (law student), of counsel), for appellees.
Reversed and remanded.
MR. CHIEF JUSTICE WARD delivered the opinion of the court:
This appeal concerns the power of the General Assembly to provide for the exclusive exercise by the State of a power of a home rule unit. We must consider sections 6(a), 6(g), 6(h) and 6(i) of article VII of the Constitution of 1970 in determining whether the City of Chicago has been barred by the General Assembly's action from regulating the operations or business of private detectives. (Ill. Const. 1970, art. VII, secs. 6(a), 6(g), 6(h) and 6(i).)
Those sections provide:
"(a) * * * Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt.
* * *
(g) The General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or limit the power to tax and any other power or function of a home rule unit not exercised or performed by the State other than a power or function specified in subsection (l) of this Section.
(h) The General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit other than a taxing power or a power or function specified in subsection (l) of this Section.
(i) Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive."
*509 In its first effort to limit the powers of home rule units under section 6(h) which this court has reviewed, the General Assembly enacted Public Act 77-1818 (Ill. Rev. Stat. 1973, ch. 127, pars. 901-903, repealed by Public Act 78-1297, sec. 56 (1975)), which became effective on October 1, 1972. Section 1 of the Act provided:
"Pursuant to paragraph (h) of Section 6 of Article VII of the Constitution of 1970, the power to regulate any profession, vocation or occupation for which licensing or registration is required by any of the Acts hereinafter listed in this Act, shall be exercised exclusively by the State and may not be exercised by any unit of local government, including home rule units."
Sections 2.01 through 2.30 of the Act then listed various professions and occupations, all of which were regulated to some extent by the State, that units of local government were to be prohibited from regulating. Section 2.28 prohibited local government units from regulating private detective agencies which were subject to the registration requirements of "An Act to provide for Licensing and Regulating Detectives and Detective Agencies * * *" (hereafter, the Private Detective Act) (Ill. Rev. Stat. 1971, ch. 38, pars. 201-1 et seq.).
However, this court in Fuehrmeyer v. City of Chicago, 57 Ill.2d 193, held that Public Act 77-1818 was unconstitutional. We did so on the ground that it violated section 8(d) of article IV of the Constitution of 1970 (Ill. Const. 1970, art. IV, sec. 8(d)), as we judged the bill expressly amended provisions of statutes without setting forth the sections amended (57 Ill.2d at 201) and because the bill was not confined to one subject (57 Ill.2d at 204). We did not consider the question whether a bill granting the State the right to exercise exclusively any power or function of a home rule unit, which power or function the State had previously exercised, required a three-fifths vote or a simple majority vote in both houses of the General Assembly. (57 Ill.2d 197-98.) Nor did we interpret the language "exclusive exercise by the State of any power or *510 function of a home rule unit" appearing in section 6(h).
Our decision in Fuehrmeyer was announced on March 29, 1974, and a petition for rehearing was denied on May 31, 1974. The General Assembly subsequently (September 5, 1974) passed (by a majority vote in the Senate) Public Act 78-1232 (Ill. Rev. Stat., 1974 Supp., ch. 38, par. 201-27), which became section 27 of the Private Detective Act. That act, that is, Public Act 78-1232, is the subject of this appeal. It provides:
"Pursuant to paragraph (h) of Section 6 of Article VII of the Constitution of 1970 the power to regulate the private Detective Business shall be exercised exclusively by the State and may not be exercised by any unit of local government, including home rule units."
Prior to our decision in Fuehrmeyer, the City of Chicago, which together with Marshall Korshak, as director of the Department of Revenue of the City of Chicago, and James M. Rochford, as superintendent of police, are the defendants here, amended its Municipal Code to establish a procedure for the licensing of security firms. The ordinance, which became effective on January 1, 1974 (Chicago Mun. Code, ch. 117), defines a security firm as a detective agency conducting business in Chicago which is subject to the State registration requirements of the Private Detective Act. A detective agency conducting business in Chicago, therefore, must obtain licenses from both the State and the City of Chicago (hereafter, the City). However, the licensing provisions of the ordinance differ from those of the statute. For example, in order to obtain a certificate of registration from the State, an individual must post a $5,000 bond (Ill. Rev. Stat. 1973, ch. 38, par. 201-6a(f)), while in order to obtain a license from the City the applicant must be covered by liability insurance in the amount of $1,000,000 (Chicago Mun. Code, ch. 117-3). Too, the Department of Registration and Education, which is charged with the State regulation of detective *511 agencies, requires a person employed as a security guard to have 5 hours' training in the handling of weapons (Rules and Regulations of the Department of Registration and Education for the Administration of the Illinois Detective Act, Rule VI (1974)), and Chicago's ordinance requires 10 hours of firearms on-range training (Chicago Mun. Code, ch. 117-6(g)).
The plaintiffs here are detectives, detective agencies, and organizations which represent them, that conduct business in Chicago. They are registered with and regulated by the Illinois Department of Registration and Education and under the terms of the ordinance are subject to the licensing provisions of the ordinance. On March 17, 1975, the plaintiffs filed a complaint in the circuit court of Cook County alleging that the ordinance violates the equal protection clause and the due process clause of the Constitution of 1970 (Ill. Const. 1970, art. I, sec. 2), and that the ordinance is void as it directly contravenes Public Act 78-1232. The plaintiffs asked for an injunction to prevent the defendants from enforcing the ordinance and a declaration that the ordinance was void. The defendants filed a motion to dismiss the complaint for failing to state a cause of action, contending that Public Act 78-1232 was not enforceable because it had not been passed by a three-fifths vote of both houses of the General Assembly in accordance with section 6(g) of article VII of the Constitution of 1970. The circuit court allowed the motion, and the plaintiffs' appeal is before this court under Rule 302(b) (Ill. Rev. Stat. 1973, ch. 110A, par. 302(b), 58 Ill.2d R. 302(b)).
The plaintiffs state that Public Act 78-1232 was passed by a majority vote of both houses of the General Assembly and argue that this is all that was required for the bill to become effective under section 6(h) of article VII of the Constitution of 1970. Therefore, they contend, the City of Chicago is barred from regulating private detective operations. The defendants do not disagree with *512 the contention that Public Act 78-1232 needs only a majority vote to become effective under section 6(h), but they argue that "the exclusive exercise [by the State] should be limited only to those areas specifically provided for by the act itself, and to functions and powers already being exercised by the State." That is, the defendants' position is that Public Act 78-1232 only prevents local governments from regulating the private detective business in those aspects and areas regulated by the State. They contend that local governments are free to regulate in areas not regulated by the State under the Private Detective Act.
We consider it clear that the drafters of the Constitution of 1970 did intend that the General Assembly by a simple majority could enact legislation under section 6(h) of article VII granting the State the right to exercise exclusively a power or function of any home rule unit provided that the State is already exercising that power or function. (4 Record of Proceedings, Sixth Illinois Constitutional Convention 3055-3105, 3316-3360 (hereafter Proceedings).) This question is considered in a comprehensive discussion of sections 6(a), 6(g), 6(h) and 6(i) of article VII appearing in the majority report of the convention's Committee on Local Government:
"* * * As to other home-rule powers, the Committee's proposal involves a distinction between state legislation which merely denies or limits powers of local governments, on the one hand, and state legislation which actually exercises a power on behalf of the state or authorizes a power to be exercised by the state, on the other. The first type of legislation, which includes only a bare denial or limitation of local power, can serve very useful purposes. But if home-rule is to be most effective, local governments should have the widest possible latitude in determining their own policies and actions, free of all but the most important of these purely negative statutory restraints. Furthermore, home-rule units should be protected against sudden, massive denials of power by `laundry list' legislation. Thus, the Committee believes that a simple negative denial or limitation of local *513 home-rule powers should be effective only if enacted by three-fifths of the membership of both houses of the General Assembly and has so provided in paragraph 3.2(b) [section 6(g)].
* * * Different considerations become important when a state statute actually exercises a governmental power or authorizes a state agency to do so. Here, the state interest is much more significant than where the statute merely denies the power to local governments. For example, extensive conflict and confusion could result if each home rule unit of government could regulate public utilities independently and the state was powerless to vest exclusive jurisdiction in a utilities commission. * * *
* * *
* * * Paragraph 3.2(b) and (c) [sections 6(h) and 6(i)] deal with these situations where the state has exercised a power itself and provide for its exercise by a state agency rather than just restricting local action. Paragraph 3.2(b) [section 6(h)] permits the state to act  with an ordinary majority  in any matter even though it might `pertain to the government and affairs' of a home-rule unit. It also makes clear that in case of conflict with local legislation, the state legislation always prevails when it expresses the intent to be exclusive and to preclude additional local regulation. Paragraph 3.2(c) [section 6(i)] makes clear that if the state legislates but does not express exclusivity, home-rule units retain the power to act concurrently, subject to limitations provided by law. * * *
* * *
The subject treated by paragraphs 3.2(b) and (c) [sections 6(h) and 6(i)], i.e., the conflict between state legislation and local legislation, is the most troublesome area in the dual system of powers that comes with home rule. The courts have wrestled with it in every home-rule state. The solution proposed here is novel and unique. It proposes, as it must, to preserve state sovereignty when the General Assembly expresses its intent to prohibit local government activity. But absent such an expression of intent, local governments are left free to complement the state activity. The purpose of distinguishing between statutes which express exclusively [sic] and those which do not is to minimize the area where courts might have to struggle to find legislative intent. It is a guideline to the courts that concurrent local action is to be permitted *514 unless a contrary legislative intent is expressed." (7 Proceedings 1569, 1641-1645.)
See also Baum, A Tentative Survey of Illinois Home Rule (Part II): Legislative Control, Transition Problems, and Intergovernmental Conflict, 1972 U. Ill. L.F. 559, 568-74; Biebel, Home Rule in Illinois After Two Years: An Uncertain Beginning, 6 John Marshall J. Prac. & Proc. 253, 279-81; Vitullo, Local Government: Recent Developments in Local Government Law in Illinois, 22 De Paul L. Rev. 85, 91-92; Minority Report of the Convention Committee on Local Government, 7 Proceedings 1853, 1883, 1890-1891.
We cannot accept the defendants' contention that the exclusivity in favor of State regulation effected by Public Act 78-1232 is limited by the extent of the regulation then in effect under the Private Detective Act. The Act itself certainly does not allow an interpretation that its reach was to be so limited. With complete explicitness it states that the power to regulate the private detective business shall be exercised exclusively by the State and that it may not be exercised by any unit of local government, including home rule units. Section 6(h) unambiguously authorizes the General Assembly to provide for this exclusive exercise by the State found in Public Act 78-1232. Section 6(i) allows home rule units to exercise their powers and functions concurrently with the State only to the extent that the General Assembly "does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." There is nothing to suggest any limited exclusivity such as the defendants argue for. There is no indication that to be exclusive the State's regulation must be, impossibly, exhaustive or complete.
That a declaration of exclusivity under section 6(h) unconditionally bars a home rule unit's exercise of the affected power is illustrated in an example of the operation of section (h) appearing in the majority report *515 of the convention's Committee on Local Government:
"5. Home-Rule City adopts an ordinance requiring door-to-door salesmen to obtain a city license (conditioned upon the meeting of certain qualifications and the payment of a reasonable fee) before engaging in their trade with the city. The ordinance is valid under the home-rule powers granted in paragraph 3.1(a) [section 6(a)]. The General Assembly could forbid municipal licensing of door-to-door salesmen by a three-fifths vote of the membership of each house elected and serving, pursuant to paragraph 3.2(a) [section 6(g)]. Under paragraph 3.2(b) [section 6(h)], the General Assembly could instead provide for a state wide system of licensing, effected either through a state agency or through municipalities and other local governments acting as agents of the state. This state-wide system would, if declared exclusive by the General Assembly, preclude additional local licensing under paragraph 3.2(b) [section 6(h)]." 7 Proceedings 1652-1653.
We cannot accept two other contentions the defendants make regarding the passage of Public Act 78-1232. The first argument is that the Act violates section 8(d) of article IV of the Constitution of 1970 (Ill. Const. 1970, art. IV, sec. 8(d)) because it expressly amends the Private Detective Act without setting forth the sections amended as the Constitution requires. The second is that the Act is ineffective because it failed to repeal the statute authorizing municipalities to license and regulate detectives (Ill. Rev. Stat. 1973, ch. 24, par. 11-42-1).
Under the first of these contentions it is said that because of our holding in Fuehrmeyer we must declare the statute here unconstitutional. The argument must be rejected. In Fuehrmeyer we said that the General Assembly by one independent statute sought to amend only by reference some 30 statutes concerning the regulation of various professions and occupations. "That Public Act 77-1818 is an attempt to amend numerous statutes `simply by referring to' them clearly appears from section 2 of the Act, which provides: `The Acts referred to *516 generally in section 1 are those Acts specifically listed in sections 2.01 through 2.30.' Nowhere does Public Act 77-1818 set forth the relevant provisions of any of the 30 acts to which it makes reference. It simply recites their titles." 57 Ill.2d at 200.
The Act here makes a declaration of exclusivity under section 6(h) which concerns only the private detective business and becomes a section of the Private Detective Act. This court said in Maulding v. Skillet Fork River Outlet Union Drainage District, 313 Ill. 216, 220, that:
"It is a common and unobjectionable practice to add a section or sections to an act for a separate and distinct purpose, and the constitution [referring to section 13 of article IV of the Constitution of 1870, now section 8(d) of article IV of the Constitution of 1970] does not require any part of the act to which the section or sections are added to be printed at length in the amendatory act where there is no change in the general law except to add a section or sections. (People v. Edmands, 252 Ill. 108; People v. Exton, 298 id. 119; People v. Moyer, id. 143; Bishop v. Chicago Railways Co., 303 id. 273.)" People ex rel. James v. Illinois Central R.R. Co., 314 Ill. 373; People ex rel. Rusch v. Ladwig, 365 Ill. 574.
We consider that the defendants' second contention also is unsupportable. Public Act 78-1232 repeals by implication that section of the Municipal Code which authorizes municipal regulation of private detectives concurrently with that by the State (Ill. Rev. Stat. 1973, ch. 24, par. 11-42-1). An act which is complete in itself and which only by implication repeals a prior statute does not violate section 8(d) of article IV of the Constitution. People ex rel. Kucharski v. Hiering, 49 Ill.2d 304, 307; People ex rel. Kaneland Community Unit School Dist. No. 302 v. Howlett, 30 Ill.2d 128, 130; Co-ordinated Transport, Inc. v. Barrett, 412 Ill. 321, 330; People ex rel. *517 Gramlich v. City of Peoria, 374 Ill. 313, 317-18; DeMotte v. DeMotte, 364 Ill. 421, 424; Wilkie v. City of Chicago, 188 Ill. 444, 452; 1 A. Sutherland, Statutes and Statutory Construction, secs. 22.13, 22.20-22.22 (4th ed. 1972).
For the reasons stated, the judgment of the circuit court is reversed and the cause is remanded to the circuit court of Cook County for further proceedings consistent with this opinion.
Reversed and remanded, with directions.